UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Robert Scheick,

       Plaintiff,

v.

Tecumseh Public Schools, et al.,

       Defendants.

_____/

Case No. 11-10493

Honorable Nancy G. Edmunds

## <u>ORDER AND OPINION GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [25, 29]</u>

Before the Court are Defendants Tecumseh Public Schools and Professional Education Services Group, LLC's motions for summary judgment on Plaintiff Robert Scheick's federal and state age discrimination claims against them. (Dkt. 29, 25.) Plaintiff, the former principal of Tecumseh High School, alleges he has direct evidence of age discrimination when his boss, Superintendent Michael McAran told Plaintiff that "they just want someone younger" in the principal position. Plaintiff alleges the "they" means the school board. Failing direct evidence, Plaintiff alleges that he at least has brought forth a claim of circumstantial evidence of age discrimination because he was replaced by a substantially younger person when the school year started. Because the Court finds that Plaintiff has not presented direct or sufficient circumstantial evidence to proceed on his claims, the Court GRANTS Defendant TPS and Defendant PESG's motions for summary judgment.

**I.    Facts**

In July, 2004, Plaintiff became the high school principal for TPS. (Pl.'s Resp., Pl.'s Dep. at 10, 24-25.) Three years later, in June or July, 2010, Plaintiff voluntarily retired through the Michigan Public School Employees Retirement System. (*Id.* at 27.) As part of the retirement package, Plaintiff received pension benefits, medical, dental, and vision insurance, and survivor benefits. (*Id.* at 28-29.) After retiring from TPS, Plaintiff took advantage of a law that allowed an administrator to officially retire but also be rehired by a school district through a third party. (*Id.* at 27-29.) This type of arrangement allowed someone in Plaintiff's position full retirement benefits but also allowed a school district like TPS to continue employing experienced administrators but save on paying the administrator's fringe benefits such as health insurance. Plaintiff entered into a three-year contract with third-party PESG and was assigned to be TPS's high school principal pursuant to a contract between TPS and PESG. (*Id.* at 29.) The contract was for July, 2007 to June 30, 2010. (*Id.* at 31.) The contract allowed TPS to save $29,487.00 in the first year alone. (PESG Mot., Ex. 3.)

Nearing the end of his contract, on February 25, 2010, Plaintiff, then 56 years old, had a performance review with his supervisor, Superintendent Mike McAran. (Pl.'s Dep. at 56, 60.) This time was the first that Plaintiff had ever had a formal evaluation. At this review, Plaintiff stated that McAran "discussed the direction the school wanted to go with the principal and superintendent positions in the future[.]" (*Id.* at 57.) Plaintiff remembered that he said he would work at least two more years, until his son graduated from college. (*Id.*) Plaintiff stated that McAran informed him that the board "wanted to hire somebody and to put them in the high school for one to two years to get acquainted with the school district

and then they would put him in as a superintendent[.]" (Pl.'s Dep. at 59.)  Plaintiff stated that McAran told him that the board wanted Plaintiff to retire.  (*Id.* at 57. )

During the evaluation, Plaintiff recounted that he never told McAran that he would stay as long as McAran needed him, and he never informed McAran that he had any desire to become TPS superintendent one day.  (Pl.'s Dep. at 61.)  Plaintiff stated that it was his wish to continue at the school for longer than two years. (*Id.* at 58.)

During the evaluation, McAran pointed out several issues he had with Plaintiff's performances in the preceding years.  These issues are documented in the written evaluation. (PESG Mot., Ex. 5.)  McAran pointed out that TPS high school did not perform to expectations on the Adequate Yearly Progress state requirement for two of the three years Plaintiff was contracted as principal.  (*Id.*)  The high school did not meet the requirement due to clerical errors.  (*Id.*)  McAran noted that Plaintiff needed to oversee the "correct completion of all such reports to ensure this type of error does not re-occur." (*Id.*) McAran also noted that Plaintiff had not attended several district school improvement meetings for the 2009-2010 school year.  (*Id.*)  He noted that Plaintiff also needed to be present for all the Health Advisory Committee meetings.  (*Id.*)  McAran stated that Plaintiff needed to be more visible in the community and needed to attend athletic and music contests on a regular basis.  (*Id.*)  McAran also stated that Plaintiff needed to attend the athletic and music booster meetings on a regular basis.  (*Id.*)  McAran also found that Plaintiff needed to be more attentive to State policies and procedures, such as completing the necessary forms for the Homebound Services section of the State School Aid Act.  (*Id.*) McAran finally noted that Plaintiff needed to improve his grammar and punctuation. (*Id.*) McAran also attached a July, 2008 memorandum concerning an NCAA transcript issue

3

involving a student in which Plaintiff was cautioned to not let the incident happen again. (*Id.*)  Plaintiff did not dispute that some of the alleged incidents happened, but he does dispute the severity of the individual issues.

McAran also took issue with Plaintiff's failure to bring the graduation speeches to the 2009 graduation, a failure that caused a very small delay in the ceremony.  (McAran Dep. at 59-60, Pl.'s Dep. at 45-46.)  McAran also stated that the board did not see the leadership capabilities in Plaintiff that they wanted.  (McAran Dep. at 87.)

McAran agreed that he used this evaluation as a "steppingstone" to end TPS's relationship with Plaintiff.  (McAran Dep. at 66-67.)

On February 26, 2010, Plaintiff met with McAran again.  (Pl.'s Dep. at 62.)  At this meeting, Plaintiff stated that McAran came to his office and said "they just want somebody younger," allegedly for the high school principal position.  (*Id.*)  Plaintiff believed that the "they" was the board.  (*Id.*)  Although Plaintiff was not sure if McAran mentioned the board. (*Id.* at 63.)  But Plaintiff assumed that McAran meant the board.  (*Id.* at 64.)  Plaintiff stated that the entirety of this second conversation was about Plaintiff leaving his principal position.  (*Id.* at 65.)  Plaintiff allegedly asked about whether a one-year improvement plan was a possibility.  (McAran Dep. at 89.)  McAran stated that he responded that he did not think so, and that, if Plaintiff remained, the board could make like "Hell" for Plaintiff.  (*Id.* at 90.)  McAran added that he was unsure whether he said "Hell" or Plaintiff did, but that during the conversation, they both understood that the board could make things hard for both of them.  (*Id.*)  Plaintiff also alleged that he told McAran that the board could force McAran to fire him.  (Pl.'s Resp., Ex. 6.)  To which McAran allegedly responded, "yup."  (*Id.*)

On March 8, 2010, Plaintiff gave McAran a memorandum detailing some issues Plaintiff had with his evaluation. (Pl.'s Dep. at 72.)  In the letter, Plaintiff acknowledged that he did not meet the Adequate Yearly Progress goal, but he explains that the failure was due to a clerical error and that the only way he could have corrected the error was by doing the data entry himself. (PESG Mot., Ex. 7, Plaintiff Letter.)  Plaintiff understood that he was "ultimately responsible for mistakes made by [his] subordinates," though. (*Id.*)  Plaintiff took further issue with McAran's problems with his alleged missing meetings and not attending school events. (*Id.*)  Plaintiff objected to the two meetings he allegedly missed. (*Id.*)  He stated he attended the first one and that he only missed the second meeting because he was at another more important meeting, which he stated he informed McAran about prior to missing the meeting. (*Id.*)  Plaintiff also stated that he attended many sports and musical performances. (*Id.*)  And while he admitted that he did not attend the sports and music booster meetings, he also stated that he did not know his attendance was expected. (*Id.*)

On March 8, 2010, Plaintiff was copied on a letter to PESG. (Pl.'s Dep. at 76.)  Plaintiff acknowledged that the letter showed that PESG would not be renewing his contract. (*Id.*)  Plaintiff stated that he believed that the board made the decision not to renew his contract. (*Id.* at 77.)  Plaintiff stated that the reason the board did not renew his contract was because they wanted someone younger. (*Id.*)   He based his belief off of McAran's statement to him. (*Id.*)   He acknowledged that neither the board nor the superintendent was mentioned in the letter. (*Id.*)  And he agreed that he was never a part of any conversations between the school board members and McAran regarding Plaintiff's

employment contract.  (*Id.*)  Plaintiff admitted that no board member ever told him that they wanted someone younger as a principal.  (Pl.'s Dep. at 79.)

McAran's recollection of the conversations was similar to Plaintiff's recollection, save for the "younger" comments.  McAran stated that the evaluation was a "steppingstone" to ending the relationship with Plaintiff.  (McAran Dep. at 66-67.)   He added that the board "as a whole" did not give him direction as to Plaintiff.  (*Id.* at 67.)  McAran stated that he felt that the board wanted more interaction with the community out of Plaintiff.  (*Id.*)

On March 15, 2010, Plaintiff stated that he again met with McAran and that McAran again implied that the board wanted someone younger for both the principal and superintendent positions.  (Pl.'s Dep. at 90.)  But he again "assumed" that McAran was talking about the board.  (*Id.*)

As Plaintiff's contract was heading towards its end date, the school district was facing a budget crisis.  At a school board meeting, TPS's finance director, William Wright, told the board that it was facing a two and a half million dollar budget deficit.  (PESG's Mot., Ex. 8.)

McAran stated that the school was facing "dire" financial problems and had to do something about the issues.  (McAran Dep. at 68.)  One of the means by which McAran sought to alleviate a part of the financial problem was that he would operate the high school and be the superintendent and the high school principal until the school district's finances improved.  (*Id.*)  McAran stated that the plan for him to take over the role of principal was conceptualized in March, 2010.  (*Id.* at 69.)  He stated that only he and the school board president knew of the plan.  (*Id.* at 70-71.)  McAran explained that he related to the board president that Plaintiff's recommendation would not be a "glowing" one, because of the

6

problems McAran had been noticing. (*Id.* at 71.) McAran added that the board did not give him direction to remove Plaintiff. (*Id.* at 67.)

Plaintiff acknowledged that TPS was facing financial difficulties during the six-year period that he was principal. (Pl.'s Dep. at 34.) Plaintiff also acknowledged that he knew TPS had a loss of funding and was going to have to cut certain programs at its schools because of the requirement to balance the school budget by the end of the year. (*Id.* at 34-36.)

Plaintiff was aware that the school board had decided to combine the principal position and the superintendent position in March or April, 2010. (Pl.'s Dep. at 82.) Plaintiff stated that McAran made the announcement that he would be assuming the principal duties as well as remaining superintendent. (*Id.* at 83.) At that meeting, Plaintiff also stated that the board discussed assigning principals different buildings and closing an elementary school. (*Id.* at 84.)

Plaintiff left the principal position at the end of his contract, on June 30, 2010. McAran then took over the principal position for one month. (McAran Dep. at 95.) After that first month, McAran learned that TPS's income and student count was up, so TPS was going to restore two positions–the high school principal and an elementary principal.[1] (*Id.*) McAran stated that he hired the high school principal as a direct hire and not as a contract hire through PESG. (*Id.*) McAran stated that he did not use PESG because the hire would not have benefitted from a PESG hire because the person and TPS would not have been

---

[1]See also PESG Mot., Ex. 11, July 26, 2010 school board minutes, reflecting an increase in funding and the school board's desire to reinstate the high school principal position and the elementary school position previously eliminated.

able to retire and still use PESG as an employer.  (*Id.*)  McAran agreed that someone in a retirement position from PESG would benefit, whereas a new hire would not.  (*Id.* at 95-96.) McAran stated that the interview process for the new principal occurred in the middle of August.  (McAran Dep. at 98.)  He stated that he hired a 42 year old who was previously the TPS athletic director.  (*Id.*)

Plaintiff stated that Griff Mills was the principal when the new school year started. (Pl.'s Dep. at 87.)  He added that he did not know what happened on July 1, 2010, the day after his contract expired.  (*Id.*)  He did not know whether McAran took over the principal duties.  (*Id.*)

After Plaintiff's contract ended, he remained an employee of PESG.  (Pl.'s Dep. at 92.)  In fact, PESG offered to find Plaintiff another suitable position.  (*Id.* at 92-93.)  PESG informed Plaintiff that it would leave Plaintiff as an active employee until September 1, 2010.  (PESG Mot., Ex. 12.)  After that date, PESG stated that it would consider Plaintiff as an inactive employee.  (*Id.*)  Plaintiff did not contact PESG.

## II.    Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

8

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

9

### III.   Analysis

The ADEA prohibits an employer from discharging an individual "because of such individual's age."  29 U.S.C. § 623(a)(1).  Michigan's Civil Rights Act does not allow an employer to "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of . . . age."  Mich. Comp. Laws § 37.2202(1)(a).  Age discrimination claims brought under the Michigan statute are analyzed under the same standards as federal claims brought under the ADEA.  *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009).  *See also Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012).

A plaintiff bears the burden to show that "age was the 'but-for' cause of the employer's adverse action."  *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).  A plaintiff can establish an ADEA violation by either direct or circumstantial evidence.  *Id.* (citation omitted).

Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citation omitted).  "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 913-14 (6th Cir. 2013) (citation omitted).  Circumstantial evidence "is proof that does not on its face establish

10

discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570 (citation omitted).

### 1. Plaintiff has failed to bring forth direct evidence of age discrimination

Both TPS and PESG argue that McAran's "they just want someone younger" comment is not direct evidence of age discrimination. (TPS Mot. at 14, PESG Mot. at 9.) Both argue that the statement requires inferences in order to determine that the statement shows a discriminatory motivation. (TPS Mot. at 15, PESG Mot. at 10.) TPS argues that the "they" portion requires one to make an inference that it is the board and that the purpose of why "they" wanted someone younger required an inference. (TPS Mot. at 15.) PESG argues that an additional inference is required–the inference "to conclude not only that the comments related to the board but that [] McAran was hiding behind the board to disguise his own discriminatory motive." (PESG Mot. at 10.) PESG states that "while [] McAran believed he had the backing of the board to end the relationship with [Plaintiff] . . . the ultimate decision was made solely by him." (*Id.* at 11.) (McAran Dep. at 67, 72-73, 105-108.)

PESG argues that, in context, McAran's statement does not evidence discrimination. (PESG Mot. at 9.) PESG argues that preceding the "younger" discussion, McAran questioned Plaintiff as to how long Plaintiff planned on working because the school board wanted someone to transition from working as a principal for a few years to then be the superintendent. (*Id.* at 9-10.) Given that Plaintiff represented that he desired to work only two more years, PESG argues, McAran's comment made sense, as does the decision not to renew Plaintiff's contract, because he would be unable to transition to be the

superintendent. (*Id.* at 10.)

Plaintiff argues that "they just want someone younger" statement is direct evidence of discrimination. (Pl.'s Resp. at 17.)  He maintains that the "they" directly refers to McAran's statement the day before of "the board wants you to retire." (*Id.*)  Plaintiff adds that McAran made the comment in two separate meetings. (*Id.*)  Plaintiff argues that McAran stated that his decision to not renew Plaintiff's contract was only based on Plaintiff's performance, not on the school district's finances.  (Pl.'s Resp. at 18, citing McAran Dep. at 125.)  Plaintiff also argues that the school board, on July 19, 2010, actually voted to post an open position for the high school principal.[2]  (Pl.'s Resp., Ex. 13.)

The "younger" statement is not direct evidence.  Viewing the February 25 and 26 conversations together and in context, the "younger" statement could mean that McAran made his decision on the number of years Plaintiff stated he was willing to work, not on Plaintiff's age.  While there is a correlation between number of years left to work and age, in context, too many inferences must be drawn and this statement is not direct evidence of age discrimination.

> To "retire" as opposed to "quit" usually brings to mind a voluntary separation from employment based on, among other things, an employee's years of service.  Yet, "years of service" is conceptually distinct from "age."  While both terms apply to many of the same individuals in various contexts, the overlap is not perfect.  An older employee might, for example, be a new hire

---

[2]The July 19, 2010 board minutes show that the board "discussed putting back the high school principal position" . . . and that "McAran stated that he would like to see the high school principal position . . . be put into the budget."  (Pl.'s Resp., Ex. 13.)  The minutes also show that McAran "suggested the posting go out for both positions as soon as possible."  (*Id.*)  The minutes reflect that one board member stated that he would like to wait on the posting until the State acted on funding.  (*Id.*)  The president of the board stated that the board prioritize the position if the money were to become available.  (*Id.*)

with a particular employer, and therefore have only a couple of years of service. Alternatively, a younger employee might have worked at one employer since graduating high school, and therefore have a relatively long period of service with that employer. [] It is true that younger workers typically do not "retire" from an employer, while older workers typically do. Yet, it is this "typicality" rather than "identity" which requires that an inference be drawn before "Why don't you retire" can become evidence of a discriminatory animus like "Why don't you retire; you're too old."

*Scott v. Potter*, 182 F.App'x 521, 526 (6th Cir. 2006) (rejecting the plaintiff's suggestion that the statement "Why don't you retire and make everybody happy?" does not evidence direct evidence of age discrimination.) (citations omitted).

The "younger" statement is also not direct evidence because it requires the Court to draw too many inferences about the statement. The "they" is ambiguous.[3] Plaintiff stated that he "assumed" that the "they" was the board. And that assumption is a reasonable inference. But looking at the evidence as a whole, McAran stated that he only spoke with three of the board members. Plaintiff has not suggested otherwise. And as TPS suggests, McAran only spoke to three board members–Januszek, Johnson-Berges, and Sines–and

---

[3]TPS points to *Fuhr v. School District of the City of Hazel Park*, 837 F.Supp.2d 675 (E.D.Mich. 2011) (Friedman, J.), to supports its claim that McAran's "younger" statement is not direct evidence of discrimination. (TPS Mot. at 14.) There, the plaintiff, a woman who had sued her school district to become the boys basketball coach, and won, was removed, five years later, from her girls basketball coaching position. *Fuhr*, 837 F.Supp.2d at 682. She claimed she had direct evidence of discrimination with the following statement;

He said they are doing this to you to get even, you know. Yes, they are doing this to you to get even with you because–I can't remember exactly. They are doing this to you to get even because you stood up for your rights. They are doing this to you to get back at you for winning the lawsuit.

*Id.* The court held that the statement was not evidence of discrimination. *Id.* The court reasoned that the "they" and the "this" were ambiguous, and both required a factfinder to make inferences to interpret the statement as the plaintiff suggested. *Id.* The court further reasoned that the conversation took place before the plaintiff was removed from her position. *Id.* And the court finally discussed how the person plaintiff was quoting was the actual decisionmaker to remove the plaintiff from her position and not an actual "they." *Id.*

that they never discussed Plaintiff's age and that three members' individual opinions cannot legally constitute the viewpoints of the board.  (TPS Mot. at 17.)  *Wayne Cnty Sheriff v. Wayne Cnty. Bd. of Comm'rs*, 385 N.W.2d 267, 269 (Mich.Ct.App. 1983) (stating that "individual board members' viewpoints are not relevant since the board exercises its power as a collective entity and not as individuals.") The Court agrees with TPS's suggestion–the Court again would be required to infer that the discussion with three board members was the entire board's feeling on Plaintiff, an inference that renders the statement not direct evidence.

And finally, the statement is not direct evidence because there is evidence that McAran was the sole decider in the decision to not have Plaintiff return.  *See Geiger v. Tower Auto.*, 579 F.3d 614, 621-22 (6th Cir. 2009) (citing cases that held that statements by non-decisionmakers do not constitute direct evidence and are more appropriately analyzed as circumstantial evidence.) (citations omitted).  And McAran stated, and Plaintiff has not presented evidence to the contrary, that he did not base his decision to not renew Plaintiff's contract on Plaintiff's age.

Both TPS and PESG argue that, even if the Court found that the comment was direct evidence of discrimination, that summary judgment would still be appropriate because TPS would have not renewed Plaintiff's contract because of the financial problems the school district was facing.  (TPS Mot. at 18, PESG Mot. at 11.)  *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both productive and persuasion shifts to the employer to prove that it would have

terminated the employee even if it had not been motivated by impermissible discrimination.") (citations omitted). Both TPS and PESG point to TPS's more than two million dollar deficit and the already-in-place plan to eliminate several principalships and cut programs. (TPS Mot. at 18-19, PESG Mot. at 11.) Both TPS and PESG reason that McAran, who was set to replace and did replace Plaintiff, was ten years older than Plaintiff. (TPS Mot. at 19, PESG Mot. at 11.)

The Court agrees with TPS and PESG, and more fully addresses Defendants' legitimate business reasons for terminating Plaintiff below.

The Court finds that Plaintiff's direct evidence age discrimination claim fails.

**2. Plaintiff cannot establish a prima facie case of age discrimination, and even if he could, Defendants have articulated legitimate business reasons for TPS not renewing his contract**

Where a plaintiff uses circumstantial evidence to prove his claim, the court analyzes the claim using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff puts forth a prima face case of age discrimination, then the defendant must "articulate some legitimate, nondiscriminatory reason" for the termination. *Id.* (citation omitted). If the defendant does so, "then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Id.* (citation omitted).

To establish a prima facie case of age discrimination, a plaintiff must show: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination. *Blizzard*, 698 F.3d at 283 (quotation marks and citation omitted). "An allegation that the

plaintiff was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant." *Blizzard*, 698 F.3d at 283 (citation omitted).

"If the termination arises as part of work force reduction, th[e] court has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009) (citation omitted).[4] "The guiding principle [in a work force reduction case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id.* at 624 (insertion in *Geiger*, citations omitted).

There is no dispute that Plaintiff's age puts him in a protected class. Plaintiff argues that he was replaced by Griff Mills, who was in his early forties. Plaintiff then argues that he was qualified for his job and that he suffered an adverse action when TPS did not renew his contract.

Plaintiff has failed to establish a prima facie case of age discrimination. He fails to establish that he was replaced by a substantially younger person.

TPS first argues that Plaintiff cannot establish that he was replaced by someone who

_____

[4]The threshold question is whether there was a work force reduction. "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Gieger*, 579 F.3d at 623 (citation omitted). "A person is considered replaced 'only when another employee is hired or reassigned to perform the plaintiff's duties.'" *Id.* (citation omitted). "A person is not considered replaced when his duties are absorbed by another person 'or when the work is redistributed among other existing employees already performing related work.'" *Id.*

was younger than him, for McAran took over Plaintiff's position as principal after Plaintiff's contract expired. (TPS Mot. at 21.) TPS maintains that McAran's only assuming the role for one month was not a ruse to conceal discrimination and there is no overwhelming evidence of pretext. (*Id.* at 22.) TPS argues that the school district was facing a over two million dollar deficit, that the school had "undisputedly planned on having McAran assume the high school principal duties for nearly five months before he took over," that McAran actually did take over the principal duties, and that the school district did not decide to restore the high school principal position until the school received the unexpectedly additional funding. (*Id.* at 23.)

TPS argues that the only evidence that Plaintiff relies on is that the school district hired Griff Mills for the 2010 school year, after McAran had only been in the position for one month. (TPS Mot. at 23.)

The Court agrees with TPS. Plaintiff acknowledged that he knew, in March or April, 2010, about the plan that McAran would take over the principal duties at the high school. (Pl.'s Dep. at 82.) McAran subsuming Plaintiff's duties facially defeats Plaintiff's prima facie case. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." And quoting, "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement.") (citations omitted).

17

But being replaced by an older person is not fatal to Plaintiff's prima facie case if he can show that age discrimination was the true motivation behind the replacement and TPS was simply trying to insulate itself from liability. *See McCarthy v. New York City Technical Coll. of City of U. of New York*, 202 F.3d 161, 165 (2d Cir. 2000) *(*"Replacement by an older person may not necessarily be fatal to an age discrimination claim if, for example, a plaintiff can show that his age was the true motivation and the older replacement was hired temporarily as a means of insulating defendant from ADEA liability.") (Holding that "[t]he mere fact that [the original replacement] left after a brief employment gives little support to the inference that his employment was a subterfuge to disguise age discrimination.").

Plaintiff argues that McAran's assumption of the principal duties was a ruse to insulate Defendants from liability. The Court does not agree. Plaintiff has not presented contrary evidence to TPS's evidence that it did not plan on hiring a new principal until it had learned, in late July, 2010, that it was going to receive a substantial amount of additional funding. The Court notes, again, that the July 19, 2010 board minutes that show that the board "discussed putting back the high school principal position" . . . and that "McAran stated that he would like to see the high school principal position . . . be put into the budget." (Pl.'s Resp., Ex. 13.) And the Court further notes that the minutes also show that McAran "suggested the posting go out for both positions as soon as possible." (*Id.*) And finally, the minutes show that the president of the board stated that the board prioritize the position if the money were to become available. (*Id.*) McAran's desire to have the principal position posted and the posting of the position itself is not evidence that McAran was a decoy for age discrimination. For the president even noted that the board should prioritize the high

18

school position if funds became available.  Nothing in the these boards minutes exhibits certainty.

Plaintiff's prima facie case fails because he cannot show that he was replaced by someone younger than him or under circumstances that give rise to an inference of discrimination.

TPS also argues that Plaintiff was not qualified for the position because he had failed to maintain his continuing education requirements.  (TPS Mot. at 25.)  Plaintiff has presented evidence that he could have earned the required credits before the end of the summer. (Pl.'s Resp., Esler Dep. at 25-27.)  In the light most favorable to Plaintiff, though, the Court finds that Plaintiff could establish this element of his prima facie case.

Defendants have also suggested that Plaintiff was eliminated as part of a reduction in work force.  Both McAran and Plaintiff stated that TPS was facing serious financial problems for the 2010-2011 school year.  Both also stated that the school district was going to eliminate multiple principal positions and multiple other positions, as well as rearrange other positions within the school district.  Given this uncontested evidence, Defendants have put forth a sufficient argument that TPS was undergoing a reduction in work force. Plaintiff therefore must provide additional direct, circumstantial, or statistical evidence that shows that Defendants singled him out because of his age.  Here, Plaintiff has not brought forth the required additional evidence.  He rests his case solely on his replacement and the "younger statement."

Even if Plaintiff were able to establish a prima facie case, TPS has put for a legitimate business reason for not renewing Plaintiff's contract.  Both TPS and PESG argue that there

19

were multiple legitimate nondiscriminatory reasons to not rehire/terminate Plaintiff.  (TPS Mot. at 26, PESG Mot. at 13.)

TPS has put forth evidence that, in the three years that Plaintiff was under his contract, it found fault with Plaintiff's failure to achieve Adequate Yearly Progress for two out of the three years, failure to attend various meetings and schools events, failure to be attentive to State policies and procedures, and several other small issues.  Plaintiff denied the failure to attend various meetings and school events, but admitted the other issues. These faults, individually, may not suffice as a legitimate business reason for not renewing, but cumulatively, coupled with the financial situation, are a sufficient legitimate reason to not renew Plaintiff's contract.

Plaintiff argues that these reasons are insufficient for termination, because, on his final evaluation, he received ratings of "highly effective," "good, competent," and "needs slight improvement."  (Pl.'s Resp. at 20.) Plaintiff also argues that McAran used the evaluation as a stepping stone for nonrenewal of his contract.

When an employer offers a legitimate business reason for an adverse employment action, "the burden shifts back to the employee to prove that the stated reason for her termination is pretextual." *Blizzard*, 698 F.3d at 285.  "At this stage, the plaintiff has the burden to produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her.'" *Id.* (citation omitted, insertion in *Blizzard*.) A plaintiff can do so by showing "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [the discharge], or (3) that they were *insufficient* to motivate discharge." *Id.* (citations and quotation marks omitted, emphases

in *Blizzard*, first insertion in *Blizzard*.)  The test is not rigid, but rather "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* (citation omitted, insertion in *Blizzard*.).

Here, Plaintiff cannot argue that the reasons had no basis in fact, for he admitted that several of McAran's critiques occurred. He can only argue that the proffered reasons did not actually motivate the nonrenewal or that they were insufficient to not renew Plaintiff's contract.  Plaintiff has not brought sufficient evidence to support either argument.  The only evidence is his "younger" statement, which the Court has already discussed is not sufficient to overcome the legitimate business reason for not renewing Plaintiff's contract.

Plaintiff cannot establish his age discrimination claim through circumstantial evidence.

## IV.  Conclusion

For the above-stated reasons, the Court GRANTS Defendant TPS's motion for summary judgment and GRANTS Defendant PESG's motion for summary judgment.

So ordered.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  March 19, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 19, 2013, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager